William Jackson BUTT, II; Butt-n-Buck Hardwood Plantation, LC;
and Three Thousand Nineteen Taxpayer Class Members *v.*
The EVANS LAW FIRM, P.A.; E. Kent Hirsch, P.A.;
and David G. Nixon

01-1307 98 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered January 30, 2003

[Petition for rehearing denied March 6, 2003*]

---

\* HANNAH, J., would grant. GLAZE, J., not participating.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *William Jackson Butt II; Bassett Law Firm*, by: *Woody Bassett; Everett Law Firm*, by *John Everett* and *Jason Wales; Taylor Law Firm*, by: *Tim Brooks; Ball & Mourton, Ltd., PLLC*, by: *Rayburn W. Green; Howard W. Brill; Odom & Elliott*, by: *Bobby Odom* and *Don Elliott; Connor & Winters, P.L.L.C.*, by: *John Elrod* and *Terri Dill Chadick; Harrington, Miller, Neihouse & Krug*, by: *Mickie Harrington; Estes, Estes & Gramling*, by: *Peter G. Estes, Jr.*; and *Quattlebaum Grooms Tull & Burrow, PLLC*, by: *Leon Holmes*, for appellants.

*Timothy Davis Fox, PLLC*, by: *Timothy Davis Fox*, for appellees/cross-appellants.

Robert L. Brown, Justice. This is an appeal brought by the appellants, William Jackson Butt, II, Butt-N-Buck Hardwood Plantation (Butt-N-Buck), and 3,019 taxpayers from an order of the Washington County Circuit Court, which

awarded attorneys' fees in a consolidated illegal-exaction suit. The appeal alleges that the circuit court abused its discretion in the amount of fees awarded, which was 25% of the various settlement amounts for a total fee award of approximately $4.6 million. The named appellees, Evans Law Firm, E. Kent Hirsch, and David G. Nixon, were class counsel, who were awarded the fees in question. The appellees cross-appeal on two points: (1) the circuit court incorrectly stated the amount of the refunds made; and (2) the trial court erred in allowing appellant Jack Butt to solicit representation of members of the class. This case stems from illegal exaction suits filed in 1998 in northwest Arkansas against Washington County and various cities and school districts within that county for violation of Amendment 59 of the Arkansas Constitution. On February 12, 1998, the circuit court entered a class certification order which defined the class as "All persons and entities that have paid real or personal property ad valorem tax for the years 1993, 1994, 1995, 1996 and 1997, in any of the following taxing units in Washington County, Arkansas: City of Fayetteville, Arkansas; Fayetteville School District No. 1; City of Springdale, Arkansas; Springdale School District No. 50; West Fork School District No. 141; City of Prairie Grove, Arkansas; Prairie Grove School District No. 23, City of Elkins, Arkansas; Elkins School District No. 10; Greenland School District No. 95; Winslow School District No. 20, Lincoln School District No. 48 and Washington County, Arkansas[.]" The order further ordered that notice of the class action be given by newspaper publication and by individual notice in accordance with Arkansas Rule of Civil Procedure 23.[1]

On March 5, 1998, Mr. Butt filed a motion to intervene in the suit.[2] In his attached complaint in intervention, he stated that among the substantive issues to be resolved was "whether and how much counsel for the class will be paid and from what source." He further asserted his desire to participate in the suit for the pur-

---

[1] This court recently held that Rule 23 is not applicable to illegal-exaction class actions brought under Article 16, § 13, of the Arkansas Constitution. *See T & T Chem., Inc. v. Priest*, 351 Ark. 537, 95 S.W.3d 750 (2003). That precise issue was not raised in the instant case.

[2] The parties assume that Butt-N-Buck Hardwood Plantation also intervened but the record reveals that Mr. Butt was the sole intervenor.

pose of "determining whether, how much, and the source of attorneys' fees paid to class counsel." On April 17, 1998, Mr. Butt's motion to intervene was granted by the circuit court.

On July 3, 2000, stipulations of settlement for each government entity, all of which were subject to court approval, were filed with the Washington County Circuit Court Clerk. In each stipulation, the class and the governmental entity agreed that the "[t]axpayers shall have the opportunity to receive a prorata [sic] refund of all illegally exacted ad valorem taxes paid less the award of attorneys' fees. . . ." With regard to attorneys' fees, several of the proposed settlements read:

> 2.2 *Attorneys' Fees of Plaintiff's Attorneys.*
>
> a. Attorneys for the Plaintiff shall request an award of attorneys' fees and costs for representing the Class an [sic] amount of 33-1/3% of the illegally exacted ad valorem property taxes, subject to court approval, which shall be payable directly to The Evans Law Firm, and Hirsch Law Firm, P.A., within 14 days of entry of Order Approving Settlement. Defendant shall not object to the requested attorneys' fee of 33-1/3% of the fund.

Other stipulations of settlement that were filed read:

> *Attorneys' Fees of Plaintiffs' Attorneys.*
>
> Attorneys for the Plaintiffs shall make application to the Court to receive attorneys' fees and costs for representing the Plaintiffs in an amount not to exceed thirty-three and one-third percent (33 1/3%) of the Settlement Amount. The District agrees not to object to such application for attorneys' fees and costs up to a total amount of thirty-three and one-third percent (33 1/3%) of the Settlement Amount. The exact amount of the fees and costs to be paid to Attorneys of the Plaintiffs will be determined and awarded by the Court, which amount shall be paid out of the Settlement Amount and thereby reduce the Settlement Amount. Due to the uncertainty in payment sums that will develop should any appeal of any part of this Agreement be taken, the Parties to this agreement stipulate and agree that the damages to the settling parties in the event of appeals shall be the time value of money on any amounts which are due for payment or shall become due for payment under the terms of this stipulation and settlement agreement. The parties further agree and stipulate that any appeal

bond should be sufficient to cover the value of any payments due or to become due hereunder. The District further agrees to pay such amount as approved by the Court as follows: one-half within five (5) days of the entry of the Order Approving Settlement and the other half on or before October 2001, without interest.

In the stipulation of settlement for Washington County, the following was written regarding attorneys' fees:

*Attorneys' Fees of Plaintiff's Attorneys.*

Attorneys for the Plaintiffs shall seek as an award of attorneys' fees and costs for representing the Plaintiffs the sum of $1.5 million from the Settlement Amount, $375,000 of which shall be payable directly and jointly to The Evans Law Firm, P.A. and The Hirsch Law Firm and $375,000 to The Nixon Law Firm within 5 days of entry of the Order Approving Settlement. The remaining attorneys' fees in the amount of $375,000 jointly to The Evans Law Firm, P.A. and The Hirsch Law Firm and $375,000 to The Nixon Law Firm shall be paid directly to each firm on or before October 10, 2001, without interest. County will not object to such.

In the stipulation of settlement for the Springdale School District, the following was written:

2.4 *Attorneys' Fees of Plaintiffs' Attorneys.*

Attorneys for the Plaintiffs shall make application to the Court to receive attorneys' fees and costs for representing the Plaintiffs in an amount not to exceed thirty-three and one-third percent (33 1/3%) of the Settlement Amount. The District agrees not to object to such application for attorneys' fees and costs up to a total amount of thirty-three and one-third percent (33 1/3%) of the Settlement Amount. The exact amount of the fees and costs to be paid to Attorneys of the Plaintiffs will be determined and awarded by the Court, which amount shall be paid out of the Settlement Amount and thereby reduce the Settlement Amount. The District further agrees to pay such amount as approved by the Court as follows: one-half within five (5) days of the time in which the Court's order approving such attorney's fees becomes a final order and the other half on or before October 2001, without interest.

On August 14, 2000, class counsel Marshall Dale Evans, E. Kent Hirsch, and Stephanie Brodacz filed individual petitions for award of attorneys' fees as class counsel for the following class members: Washington County ad valorem taxpayers, City of Fayetteville ad valorem taxpayers, City of Elkins ad valorem taxpayers, City of Prairie Grove ad valorem taxpayers, City of Springdale ad valorem taxpayers, Fayetteville School District ad valorem taxpayers, Springdale School District ad valorem taxpayers, Elkins School District ad valorem taxpayers, Prairie Grove School District ad valorem taxpayers, Lincoln School District ad valorem taxpayers, Greenland School District ad valorem taxpayers, and Winslow School District ad valorem taxpayers. From August 9 through 21, 2000, notices of the settlement hearings for each group of class members were filed with the circuit clerk. Each notice either stated the amount of attorneys' fees agreed to by the parties, or stated that the court at the hearing would consider "the application of plaintiffs' counsel for an award of fees and reimbursement of expenses[.]" All notices of settlement hearings included the figure of 33 1/3% of the settlement amount in reference to attorneys' fees, with the exception of the Washington County notice which included exact figures.

On August 31, 2000, Mr. Butt and Woody Bassett entered their appearance as counsel on behalf of 3,019 taxpayers, who were members of the class, and gave notice of their objection to the attorneys' fees requested by class counsel. The list of the taxpayers was attached to the notice and entry of appearance.[3]

On September 5, 2000, Mr. Butt moved for summary judgment regarding attorneys' fees based on the allegation that insufficient notice had been given to the class members about their right to object to those attorneys' fees. On September 6, 2000, Wayne Krug, a member of the class, and Mr. Butt, moved to appoint a guardian *ad litem* for the class members on the attorneys' fees issue. Mr. Butt filed his response to class counsels' petitions for attorneys' fees on September 26, 2000. On September 29, 2000, the motion for summary judgment was denied. That same day, the

---

[3] Although there may well have been more taxpayers on the original list, no one now contests the figure of 3,019 taxpayers.

motion for appointment of a guardian *ad litem* was denied by the circuit court.

On March 16, 2001, the circuit court entered its order approving the settlement for Washington County. The court, however, retained jurisdiction of the class action in order to determine, among other things, the award of attorneys' fees and associated costs. The circuit court subsequently entered similar orders in the other settlements: on March 26, 2001, it entered orders approving the settlements with the City of Fayetteville, the City of Springdale, and Springdale School District No. 50; on April 9, 2001, it entered an order approving the settlement with the City of Elkins; on April 12, 2001, it entered orders approving the settlements with Elkins School District No. 10, Prairie Grove School District No. 23, West Fork School District No. 141, Lincoln School District No. 48, Greenland School District No. 95, and Winslow School District No. 20; and on April 13, 2001, it entered orders approving the settlements with the City of Prairie Grove and Fayetteville School District No. 1.

On May 14, 2001, following several hearings, the circuit court issued its order awarding attorneys' fees. In it, the court made numerous findings of fact and conclusions of law and awarded attorneys' fees at the rate of 25% of each settlement amount, for a total award of approximately $4.6 million for class counsel. Each government entity subsequently paid the court-ordered attorney's fees, with the exception of the Springdale School District, which will pay one half of the amount due when this appeal is final.

Notice of appeal of the circuit court's May 14, 2001 order was filed by Mr. Butt and 3,019 taxpayers on June 11, 2001. Notice of cross appeal was filed by class counsel on June 21, 2001.

### I. Motion to Dismiss

The appellees, The Evans Law Firm, P.A., E. Kent Hirsch, P.A., and David G. Nixon, have moved to dismiss the appeal of appellant 3,019 taxpayer class members. In that motion, they assert that the law in Arkansas is clear that the 3,019 alleged class members do not have standing to appeal the circuit court's deci-

sion awarding attorneys' fees because they either (1) failed to intervene in the case before the circuit court, (2) did not opt out of the case, or (3) did not file separate lawsuits challenging the adequacy of the class representation. They cite *Haberman v. Lisle*, 317 Ark. 600, 884 S.W.2d 262 (1994), in support of their motion.

In their brief on appeal, class counsel further assert that the appeal should be dismissed as to all of the appellants, including Mr. Butt and Butt-N-Butt Hardwood Plantation, as they have no financial interest in this appeal. Class counsel maintain that pursuant to the settlement agreements, all undistributed funds remain the property of the respective governmental entities, each of which has already agreed to attorneys' fees up to 33 1/3% of the settlement amount and costs and in most cases has already paid the attorneys' fees and costs in accordance with the court order. Class counsel, as a result, maintain that the appellants have no financial interest in the fees awarded to class counsel. Finally, they contend that because there was no testimony regarding the amount of money which the appellants claimed or could have claimed for refunds, as a result of this litigation, there is no way to determine whether 25% of such an unknown amount was an unreasonable attorneys' fee.

The appellants respond to the motion and admit that, with respect to the 3,019 taxpayers, the case of *Haberman v. Lisle, supra*, cannot be ignored. They urge, nonetheless, that this court overrule that decision. They point out that since our decision in *Haberman*, the Ninth Circuit Court of Appeals has held in *Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000), that unnamed class members do have the right to appeal class counsel fees, regardless of whether they had the right to appeal the settlement itself, and that the reasoning in that decision should be controlling in this case. Additionally, the appellants contend that a class member always retains an interest in attorneys' fees, even when his claims have been paid in full. Finally, they assert that they have suffered a $4.6 million loss of funds, either directly or indirectly, by the award of attorneys' fees, as those funds came from one of two sources: the refunds otherwise payable to the class members, or the refund pool which was being returned to the governmental entities, presumably for the delivery of future services.

██ ██ In *Haberman v. Lisle, supra*, this court held that where the appellant had failed to intervene in a class action at the circuit court level, he did not have standing to appeal the class-action settlement order approving attorneys' fees and costs. Although the appellants request this court to overrule *Haberman*, we note that we recently reaffirmed our holding in that case in *Ballard v. Advance Am.*, 349 Ark. 545, 79 S.W.3d 835 (2002), where we stated:

> [T]his court's opinion in *Haberman v. Lisle*, 317 Ark. 600, 884 S.W.2d 262 (1994), continues to be the controlling precedent in Arkansas. In *Haberman*, this court found that for unnamed class members to have standing to appeal a class-action settlement in state court, those class members must have intervened at the trial court level. *Haberman, supra*. Non-parties and unnamed members of the class who have failed to intervene are precluded from appealing a class settlement. *Haberman, supra*.

349 Ark. at 549, 79 S.W.3d at 837.[4] In addition, we further stated in *Ballard* that our Rule 23(b) of the Arkansas Rules of Civil Procedure did not mirror Rule 23(b) of the Federal Rules. *See e.g., Ballard v. Advance Am., supra*.

An important distinction exists between the *Ballard* facts, where the appeal of a class settlement was involved, and the case at hand, where an appeal of the amount of the attorneys' fees to class counsel is the issue. The *Haberman* case did concern an appeal of attorneys' fees, and this court addressed the split of authority regarding the right of a class member to intervene in such cases and chose to rely on the reasoning of an Eighth Circuit decision. *See Croyden Assoc. v. Alleco, Inc.*, 969 F.2d 675 (8th Cir. 1992). The *Croyden* case, like our *Ballard* decision, also concerned the right to appeal a class settlement and not an appeal of attorneys' fees for class counsel. Just this year, the *Croyden* decision was cast into doubt by the United States Supreme Court in the case of *Devlin v. Scardelletti*, 536 U.S. 1, 122 S. Ct. 2005 (2002). Thus, one of the common-law foundations for our *Haberman* decision

---

[4] We recognize that the *Ballard* language contains a misstatement in that the *Haberman* opinion involved an attempted appeal of class counsel fees by a class member and not the settlement.

has been eroded. Yet, the *Croyden* case involved an objection to a class settlement by a class member and not an objection to attorneys' fees.

■ We grant the motion to dismiss regarding the 3,019 class members under *Haberman v. Lisle, supra.* Nevertheless, we serve notice by this opinion that we will entertain in a subsequent case the issue of whether *Haberman v. Lisle, supra,* should be over-ruled in order to permit a class member to appeal attorneys' fees awarded by the circuit court when that class member merely objected to the fees but did not intervene at the trial-court level. We will do so when the distinction between an illegal-exaction class action under Article 16, § 13, of the Arkansas Constitution and a certified class under Rule 23 has been thoroughly discussed and the impact of *Devlin v. Scardelletti, supra,* has been thoroughly analyzed.

■ We deny the motion to dismiss with regard to Mr. Butt, who did specifically intervene on the issue of attorneys' fees before the circuit court and, thus, is not subject to the *Haberman* decision. Furthermore, we conclude that Mr. Butt does have a financial interest in this matter because he has a pecuniary interest affected by the circuit court's disposition of the attorneys'-fees issue. *See In Re:* $3,166,199, 337 Ark. 74, 987 S.W.2d 663 (1999). Therefore, he has standing to appeal. *See id.*

## II. Factual Findings

Mr. Butt argues as his first issue that under *Powell v. Henry,* 267 Ark. 484, 592 S.W.2d 107 (1980), which examined an award of attorneys' fees in a class action against a governmental entity, the circuit court clearly erred in making two of its findings. Specifically, he asserts that the court erred in finding that (1) there was evidence that there was a vindication of economic right and that the results obtained were a substantial benefit to the class; and (2) that class counsel were experienced and were competent attorneys in the area of illegal exactions. Mr. Butt claims that there was only the *potential* for a rollback and reduction in taxes in the Amendment 59 class action and that because all of the school districts later reinstituted by popular vote all of the *ad valorem* taxes to the

pre-rollback level, the class, in effect, rejected the rollback opportunity as not being economically beneficial. He further maintains that the economic benefit was at best neutral, and probably negative, in that any payment of a refund would necessitate a corresponding reduction in public services. Additionally, he points to the fact that only about half of the refunds were claimed. Finally, he urges that although Hirsch and Evans were competent class counsel, David G. Nixon had no prior illegal-exaction experience or class-action experience and, thus, did not qualify under the *Powell* criterion.

Class counsel respond that the circuit court correctly found that there was an aggregate refund pool of over $18.6 million created as a result of class counsel's services. They further emphasize the court's findings (1) that the members of the class enjoyed a common benefit in the millage rollbacks that were part of the settlements, and (2) that the persons receiving the government services paid for with the illegally collected money are not necessarily the taxpayers from whom the illegally collected taxes were exacted. Class counsel also claim that the appellants do not dispute the circuit court's finding that the services of class counsel were "of the highest caliber." They underscore the circuit court's finding that of over 400 practicing attorneys in Washington County, the only experienced counsel who will represent a class in an illegal-exaction case were class counsel and John Lisle, who is not involved in this litigation. Finally, they contend that David Nixon, who was singled out as inexperienced, testified that he was also working on an Amendment 59 illegal-exaction case in Benton County, had an undergraduate degree in accounting, was a certified public accountant, had practiced law for twenty years, and was involved in a substantial amount of tax work in his practice. Class counsel conclude that the balance between Evans's and Hirsch's class action experience and Nixon's tax experience equaled a successful attorney combination.

■ ■ When reviewing findings of fact by a circuit court, this court uses a clearly erroneous standard. *See* Ark. R. Civ. P. 52(a). Thus, findings by the circuit court will not be set aside unless they are clearly against the preponderance of the evidence.

*See id.* Additionally, this court gives due regard to the circuit court's opportunity to judge the credibility of witnesses. *See id.*

We turn then to case law advanced by Mr. Butt in opposition to payment of the attorney's fees. The first case is *Powell v. Henry, supra.* In *Powell*, this court examined an appeal of an order awarding attorneys' fees in an action brought by Henry and others against the mayor and aldermen of North Little Rock and the North Little Rock Electric Department, alleging that the city improperly charged its customers $639,226.24. Attorneys' fees in the amount of $95,884.31 were awarded to counsel representing the customers in the litigation. The city's officials appealed the order of attorneys' fees.

The *Powell* court noted that the action maintained by the customers was a class action which resulted in the recovery of a substantial amount which constituted a common fund and that the attorneys represented the rate payers in the litigation against the city. We then referenced several factors which were presented to the circuit court through testimony of expert witnesses: (1) time spent; (2) experience in dealing with class actions and utility rates; (3) the harmful effect of the litigation on counsel's practice; (4) the complexity of the litigation; (5) the specialized nature of utility rate cases; (6) the lack of a prospect of a continuing lawyer–client relationship; (7) the urgency of the case; (8) the contingency of the fee; and (9) the fact that the suit was against a political entity. The circuit court then made these findings: (1) there was a substantial economic benefit bestowed on the class; (2) there was a personal and professional hardship incurred by the attorneys; (3) there was a vindication of an economic right; (4) the litigation was novel; (5) the case was difficult and substantial time was devoted to it; and (6) the attorneys possessed extraordinary skill and competence.

This court concluded, without endorsing specific factors, that the circuit court had not abused its discretion in awarding attorneys' fees. We included in our discussion a comment on the need for attorneys to take these cases:

> An important factor in our consideration of the fee allowance in this case is the realization that inadequate compensation will

cause attorneys who are competent to handle this type of litigation to shun it, or if they accept it, fail to devote sufficient time to adequately prepare or present the case. This is an appropriate consideration in matters of this sort. *Old Republic Insurance Co. v. Alexander*, 245 Ark. 1029, 436 S.W.2d 829. The individual rate payer ordinarily cannot afford to employ counsel because attorneys' fees and other expenses could be expected to exceed his prospective recovery. If attorneys do avoid employment such as that accepted by the attorneys in this case because they cannot expect to be adequately compensated, even if they are successful, there would be few cases where excessive charges would ever be refunded. The fact that no one who is the beneficiary of the recovery is complaining about the award is not without significance.

*Powell v. Henry*, 267 Ark. at 491, 592 S.W.2d at 111.[5]

 Although the *Powell* case does not mandate a list of factors to be considered by a circuit court when awarding attorneys' fees, this court's decision in *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990), did precisely that. In *Chrisco*, which involved a contract dispute and not a class action or illegal-exaction lawsuit, this court held that circuit courts should be guided by several recognized factors when awarding attorneys' fees. The *Chrisco* factors parallel some of the factors found by the circuit court in *Powell* and referred to by expert witnesses in that case. The *Chrisco* factors are: (1) the experience and ability of the attorney; (2) the time and labor required to perform the legal service properly; (3) the amount involved in the case and the results

---

[5] Attorneys' fees in illegal-exaction cases are permitted by statute. *See* Ark. Code Ann. § 26-35-902 (Repl. 1997):

(a) It is the public policy of this state that circuit and chancery courts may, in meritorious litigation brought under Arkansas Constitution, Article 16, § 13, in which the court orders any county, city, or town to refund or return to taxpayers moneys illegally exacted by the county, city, or town, apportion a reasonable part of the recovery of the class members to attorneys of record and order the return or refund of the balance to the members of the class represented.

(b) If, after expiration of a reasonable period of time for the filing of claims for the illegally exacted moneys as ordered by the court, residual funds exist, said residual funds shall be deemed abandoned and escheat to the county, city, or town which exacted same.

obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar legal services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client or by the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. *See also Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002).

In the instant case, the circuit court made the following findings relevant to the issues raised by Mr. Butt:

> 30. Class Counsel in this case are experienced and competent attorneys in the area of illegal exaction.
>
> . . . .
>
> 42. The members of the plaintiff class received a benefit from the establishment of the Settlement Funds.
> 43. The members of the plaintiff class received a benefit from the millage rollback provisions contained in the Settlement Agreements.
> 44. The members of the plaintiff class received a benefit from the tax year 2000 savings with respect to those defendant taxing entities that chose to leave their millage at the rolled back levels.
> 45. The results obtained from this lawsuit were that class counsel successfully negotiated settlement agreements with all fourteen defendant taxing entities that provided both the opportunity for class members to claim refunds and for tax millage rollback relief. The settlement amount is over $18,600,000.00. The millage rollbacks affected as a result of the fourteen settlement agreements removed the levy of illegal taxes from the plaintiff class. The intervenors argue that since the September school elections raised the millage rates to the old pre-rollback levels that the plaintiff class did not enjoy any benefit from the millage rollbacks. This court agrees with Class Counsel that the millage rollback benefits are evaluated as of the date of the approval of the settlement agreements and that there is certainly a benefit received in being allowed to vote upon a tax increase. As a direct result of this lawsuit the citizens of Washington County were provided the right and opportunity to go to the polls and vote on the tax increase. The cities of Elkins, Fayetteville, and Springdale chose to leave their millage at the lower levels and Washington

County only increased their millage by approximately one-half of the amount by which it was rolled back. Therefore, all of the plaintiff taxpayers will enjoy actual tax savings as a result of the settlement agreements. In short, one of the results of this lawsuit is that the citizens of Washington County decide whether to raise their own taxes. There is no question that the plaintiff class received a substantial economic benefit and the vindication of an economic right as a result of this lawsuit. It may be that there have been and will be a loss of services as a result of this lawsuit and this Court understands intervenors' concerns and arguments in that regard. However, it should be the decision of the people of Washington County whether they want the services or lower taxes. All of the representatives of the various taxing entities testified that if the money was collected illegally they did not want it. They also testified in favor of the settlements and they all said they could pay the settlement amounts. Another result from this lawsuit was that it settled some issues of first impression regarding the interpretation of Amendment 59. A further result of this lawsuit is that it stopped the collection of an illegal exaction. If this lawsuit had not been filed, it is reasonable to assume that based on this record these taxes would have continued to be collected in violation of Amendment 59.

In the case before us, the circuit court's findings are comparable to those enumerated in *Chrisco* and referred to in *Powell*. The circuit court found that a settlement amount of over $18.6 million and taxpayer rollback relief were obtained by class counsel. That goes to the factor of the economic benefit to the class and the results obtained. Although not every class member claimed his refund, class counsel did obtain a refund for each member. The amount of the refunds set aside by each government entity is clearly definable, as each proposed settlement agreement identifies the agreed-upon amount to be made available by the entity to satisfy class claims. In addition, as found by the circuit court, a positive result was obtained in that had the litigation not occurred, each government entity could have continued collecting the illegally exacted funds. A vindicated right, as stated in *Powell*, or a positive result, as stated in *Chrisco*, was obtained by virtue of the fact that each class member got the right to vote on the matter of whether he or she desired to be taxed at the rate which had been illegally forced upon the taxpayer. As for the competency of the

attorneys, David Nixon's knowledge of taxes and his experience as an attorney, including representation in a similar Amendment 59 illegal-exaction case in Benton County, certainly support a finding of experience and ability of counsel as required by *Chrisco*.

■ The analysis of the circuit court was thorough and well-reasoned. We cannot say the circuit court clearly erred in finding an economic benefit to the class and in determining that David Nixon was experienced counsel.

### III. Excessive Fees

Mr. Butt next argues that a comparison of the award of attorneys' fees in *Powell v. Henry, supra*, and the award in the case at hand shows that the circuit court abused its discretion in failing to apply the standards consistently. Specifically, he takes issue with the circuit court's findings based on *Powell* and contends that because six of the fifteen factors used by the circuit court indicate parity with *Powell*, because two other factors show an abuse of discretion, and because the remaining seven factors provide no good reason to award more fees than what were awarded in *Powell*, the circuit court abused its discretion "by granting a higher formula for class counsel attorneys' fees where none of the factors indicated a higher fee structure than *Powell*."

As he claimed under Issue II, Mr. Butt urges under this point that the economic benefit to the class was questionable. Moreover, he claims that class counsel did not suffer personal or professional hardship or forego other employment as referred to in *Powell*. Finally, he maintains that while the *Powell* court noted the absence of class members objecting to the fees awarded in that case, the presence of over 3000 objecting class members in the instant case has considerable significance in deciding the fee.

■ In *Chrisco*, this court reiterated its standard for reviewing the circuit court's award of attorneys' fees:

> We have also previously noted that due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the trial judge in assessing the applicable factors. Accordingly, an

award of attorney's fees will not be set aside absent an abuse of discretion by the trial court.

304 Ark. at 230, 800 S.W.2d at 719 (internal citation omitted). Nevertheless, this court has found an abuse of discretion and declined to award a percentage fee where the economic benefit did not lend itself to a firm figure *and* where the fee award was to be paid by the government, either state or local. *See Lake View Sch. Dist. No. 25 v. Huckabee, supra.*

 It is clear that Mr. Butt is comparing the fee award made by the circuit court to class counsel in this case to the fee award affirmed in *Powell* and arguing that we are limited by what was awarded in *Powell*. However, the *Powell* case does not prescribe a threshold for awarding attorneys' fees in all subsequent cases. We conclude that the circuit court in the case before us engaged in the proper analysis and clearly made findings that support each *Chrisco* factor. Merely because the circuit court's consideration of those factors did not effect the same result as that in *Powell* does not mean that the circuit court abused its discretion.

In the instant case, we are directly confronted for the first time with the issue of what is a "reasonable part of the recovery of the class members" to be apportioned as attorneys' fees. *See* Ark. Code Ann. § 26-35-902 (Repl. 1997). Section 26-35-902 reads:

> (a) It is the public policy of this state that circuit and chancery courts may, in meritorious litigation brought under Arkansas Constitution, Article 16, § 13, in which the court orders any county, city, or town to refund or return to taxpayers moneys illegally exacted by the county, city or town, apportion a reasonable part of the recovery of the class members to attorneys of record and order the return or refund of the balance to the members of the class represented.

> (b) If, after expiration of a reasonable period of time for the filing of claims for the illegally exacted moneys as ordered by the court, residual funds exist, said residual funds shall be deemed abandoned and escheat to the county, city, or town which exacted same.

Ark. Code Ann. § 26-35-902 (Repl. 1997).

██ The circuit court reduced the percentage of the contingent fee from 33 1/3% to 25%, but applied the percentage against the settlement pool in each case for a total settlement amount of $18,602,277, as opposed to applying the percentage against the total amount claimed by the taxpayers, which was $8,629,634. By doing this, we conclude that the circuit court abused its discretion. The statute speaks clearly in terms of a reasonable part of the "recovery of the class members" being apportioned as attorneys' fees and not a reasonable part of what might have been recovered. The plain meaning of the words indicates that what a taxpayer actually recovers is the amount against which the percentage must be applied. *See Omega Tube & Conduit Corp. v. Maples*, 312 Ark. 489, 850 S.W.2d 317 (1993). Moreover, in our view, the "results obtained," which is a crucial factor under either a *Powell* analysis or *Chrisco* analysis, speaks to the direct benefit a taxpayer receives rather than what taxpayers might have claimed.

The dissent reads § 26-35-902 as requiring assessment of fees against the full settlement amounts. But that interpretation is directly at odds with the clear statutory language which reads "apportion a reasonable part of the recovery of the class members to attorneys of record." After that occurs, the balance of the claims are then paid to the class members. To the extent the full settlement amounts are not claimed by the class members, the balance of the fund escheats to the government entity. This interpretation is not only clear from the statutory language but is entirely reasonable in light of the fact that attorneys' fees are being assessed against taxpayer money.

Neither *Powell v. Henry, supra*, nor *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), as cited by the dissent, address or interpret § 26-35-902, which authorizes the award of attorneys' fees in illegal-exaction cases, even though the statute was in effect at the time both cases were decided. In addition, not only is the United States Supreme Court's decision in *Boeing v. Van Gamert*, 444 U.S. 472 (1980), not binding precedent on this court, but there was no statute, such as § 26-35-902, that was interpreted by the Court in that case. Finally, at least one other state has held as we do in the instant case. In *Goodrich v. E.F.*

*Hutton Group, Inc.*, 681 A.2d 1039 (Del. 1996), the Supreme Court of Delaware affirmed a chancery court's award of fees based only on claims submitted in a class-action suit.

 We remand this case to the circuit court to assess attorneys' fees based on the amount claimed by the class members in accordance with this opinion. There is one remaining problem, however. We note from the briefs in this case as well as from oral argument that in all instances except for the Springdale School District, the attorneys have already been paid their fees by the government entities as ordered by the circuit court. Generally, a party's voluntary payment of a judgment amount renders a subsequent contest of the judgment by that party moot. *See Shepherd v. State Auto Prop. & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993). Here, however, it is not the parties who paid the attorneys' fees who are contesting the amount paid but an intervenor, Mr. Butt. The question is whether an intervenor can unravel attorneys' fees by merely filing a notice of appeal when no supersedeas bond has been posted or stay obtained.

 Mr. Butt raises the specter of collusion between the paying parties and class counsel, were an intervenor not able to automatically stay the payment of attorneys' fees by filing a notice of appeal. However, Mr. Butt took no steps to stay the order awarding attorneys' fees or to post a supersedeas bond.[6] Under these facts, we hold that the issue of attorneys' fees that have been voluntarily paid is moot.

### IV. Notice

Mr. Butt next contends that members of the taxpayer class received two notices in this case: (1) a class-certification notice advising prospective members of the pending class action; and (2) a published notice advising class members of their right to object to the proposed settlement. His argument is that neither notice informed members of their right to object to attorneys' fees for class counsel. He further maintains that to award attorneys' fees

---

[6] Two of the parties (City of Fayetteville and City of Springdale) did move to stay the order to pay attorneys' fees but later withdrew their motions.

without proper notice to class members of their right to object deprives them of substantial property without due process of law, violating Amendments 5 and 14 of the United States Constitution and Rule 23 of the Arkansas Rules of Civil Procedure. Additionally, he contends that while the settlements stipulated when, where, and how a certain amount would be paid in refunds after court approval, it was abundantly clear that no settlement had been reached on attorneys' fees. He, finally, urges this court to consider the fact that the notice that was published by class representatives drew no objection to fees, while his notice which articulated the right of class members to challenge fees resulted in over 3,000 objections. He concludes that despite the fact that the 3,019 class members may lack standing, this issue should be addressed by this court because of its substantial public interest.

Class counsel respond that the circuit court's orders approving the fourteen separate settlement agreements were all filed of record during the period of time from March 16, 2001, through April 13, 2001, and that those orders resolved all issues before the court, with the exception of a determination of attorneys' fees. Class counsel submit that the issue of notice regarding an objection to attorneys' fees should have been appealed within 30 days of the entry of the orders approving the settlements. The appellants' failure to appeal in a timely fashion, argue class counsel, requires dismissal of this point on appeal. Class counsel make the additional point that the circuit court correctly held that not only was the settlement notice sufficient, but that Mr. Butt, as attorney for the objectors, specifically agreed to and approved the contents of the notices concerning the settlement. The circuit court said:

> I took this case over from another Judge and I was advised back some time ago that people had intervened on the limited objection to the attorneys' fees. And when we got to the notice portion and I was advised the case had been settled, I felt like it was important the Intervenors be involved at that point, especially in the notice. So I think then I shut down our first conference call when I asked that Mr. Butt be involved in our conference call and he was. In that particular conference call he said that notice appeared to be fine with him.

The court further found that "[e]veryone that was involved in the case was consulted, agreed to it. Nothing was said during the settlement hearings with regard to the adequacy of the notice."

 We again underscore the fact that Mr. Butt is the sole remaining appellant who has standing to appeal this issue. Mr. Butt, as the circuit court emphasized, specifically agreed to the contents of the notice regarding settlement. It seems somewhat inconsistent for him now to contend that the notices he approved were faulty with regard to objecting to attorneys' fees.

 In the instant case, two notices were provided to class members. The first provided that if a class member so desired, he or she had the right to enter an appearance before the circuit court at his or her own expense. The second notice either expressly alerted class members to the proposed amount of fees or notified members that the court would take up class counsels' application for fees and referenced all members' right to appear at the settlement hearing and show cause why the stipulation of settlement should not be approved. It is undisputed that payment of attorneys' fees was part of the settlements. Although the exact amount of the fees had not been decided upon by the circuit court at the time of the notices, the notices certainly alerted class members that an award of fees was an outstanding issue still to be decided by the circuit court, even though they had been agreed to by the governmental entities. Obviously, if a class member could challenge the settlement, that person could challenge any facet of it such as the refund itself or the fees or any other matter negotiated by class counsel and set forth in the notice.

 We analyze the notice point under the Due Process Clause of the United States Constitution because an illegal exaction is at issue and not under Rule 23 of the Arkansas Rules of Civil Procedure. See *T & T Chem., Inc. v. Priest*, 351 Ark. 537, 95 S.W.3d 750 (2003). Under these facts, we fail to discern how the Due Process Clause was violated. The circuit court did not err in finding against Mr. Butt on this point.

## V. *Guardian* Ad Litem

Mr. Butt's theory on this point is that once a settlement is achieved in a class action, class counsel's interest in a fee recovery becomes self-serving and directly conflicts with the interests of the class members because the higher the fee, the lower the recovery of the class. A guardian *ad litem*, he contends, would protect the interests of the class. Moreover, he submits that the power to protect the class by means of a guardian *ad litem* is inherent in Rule 23(d). He states that while the circuit court acts as a fiduciary with respect to the class on counsel fees, the circuit court in this case would have likely awarded class counsel their full, one-third claim had it not been for his vigorous opposition to that percentage. Thus, appointment of a guardian *ad litem* would have been proper. He concludes that as with the issue of notice to the class, a decision by the court to not address this issue "prospectively oppresses all members of all potential future classes."

■■ There is no need for this court to reach the issue. As the sole class member with standing to appeal, Mr. Butt alone can mount this argument, and he was fully informed and knowledgeable on the attorneys' fees issue and the potential conflict between himself and class counsel on the attorneys' fees issue. Moreover, he failed to timely appeal the orders approving the settlements which resulted in payment of the attorneys' fees. The circuit court did not err on this point.

## VI. *Cross-Appeal*

■■ Class counsel raise two points on cross-appeal. Initially, they contend that the amount of gross refunds paid to taxpayers was actually in excess of $8.6 million and not the $5.5 million used by the circuit court which was the amount of net refunds after deducting attorneys' fees. This issue is not sufficiently developed by class counsel for us to address it. Secondly, class counsel argue that the circuit court erred in allowing Mr. Butt to solicit members of the taxpayer class to represent them in objecting to attorneys' fees. Because we hold that only Mr. Butt has standing to appeal this matter and, further, that it is unnecessary for us to determine the standing of the 3,019 taxpayers, any

judgment rendered on the solicitation point would have no practical legal effect on the pending legal controversy. *See Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001); *Quinn v. Webb Wheel Prods.*, 334 Ark. 573, 976 S.W.2d 386 (1998). Accordingly, we decline to address it.

## *VII. Conclusion*

We emphasize, in conclusion, that under our precedent of *Haberman v. Lisle, supra,* the 3,019 class members are without standing to appeal the amount of attorneys' fees and that only Mr. Butt can appeal that issue. However, we will revisit the *Haberman* decision as it relates to the challenge of attorneys' fees when the issue next presents itself.

Because the attorneys' fees have now been paid to class counsel, with the sole exception of the Springdale School District, which owes the balance of the fees after the order relating to attorneys' fees becomes "final," we consider the issues raised regarding the fees already paid voluntarily to class counsel to be moot. We address the issue only with regard to the Springdale School District. We reverse the circuit court on the fees awarded in connection with that school district and remand for the circuit court to determine attorneys' fees based on the amount of the actual recovery of illegally-paid taxes by class members in that district. We note on this point that class counsel question Mr. Butt's standing to contest attorneys' fees paid by the Springdale School District, but we leave that issue for the circuit court to resolve.

Motion to dismiss is granted in part and denied in part. Appeal is affirmed in part and reversed and remanded in part. Cross-appeal is moot.

THORNTON, J., concurs.

CORBIN, IMBER, and HANNAH, JJ., concur in part and dissent in part.

GLAZE, J., not participating.

RAY THORNTON, Justice, concurring. I agree with the result reached by the majority opinion that this case

should be reversed and remanded. However, I write separately because I think that the issue of attorney's fees is not moot. In my opinion, that issue should be considered upon remand by the trial court.

D ONALD L. CORBIN, Justice, concurring in part; dissenting in part. The amount of attorney's fees awarded in this case is excessive. However, I must concur in the judgment because I agree that the issue of the reasonableness of the fees is moot, because Appellant Jack Butt failed to appeal from or otherwise seek a stay of the judgments approving the settlements.

As the majority opinion notes, each of the fourteen taxing entities in this case agreed to settle the illegal-exaction claims, and each of the settlement agreements provided for the payment of attorney's fees, either as a percentage of the settlement or as a fixed dollar amount. A fairness hearing to consider the proposed settlements was held in the trial court on September 5, 2000. No member of the class appeared at the fairness hearing. At the conclusion of the hearing, the trial court approved all of the settlement agreements. On March 16, March 26, April 9, April 12, and April 13, 2001, the trial court entered separate written judgments approving each of the settlement agreements. No appeal was taken from these judgments, and no stay was sought to prohibit their execution. Thereafter, thirteen of the fourteen taxing entities paid the full amount of their judgments, including the attorney's fees to class counsel. Only the Springdale School District has yet to pay one-half of its judgment.

Because Butt did not appeal from the judgments approving the settlements or seek a stay of their execution, and because all but one of those judgments have been paid in full, Butt has waived any challenge to the reasonableness of attorney's fees under those judgments. In my opinion, given the particular circumstances, it would be patently unfair to require class counsel to pay back the monies already received and probably already spent. I thus concur with the majority that the trial court's award of fees should be affirmed, but for that portion of the fees that remain unpaid by the Springdale School District.

That being said, I sympathize with Butt's position. I am personally offended by the amount of the award in this case, especially since it will be paid by the taxpayers, many of whom do not believe that they have benefitted from this suit. While there can be no doubt that the levy and collection of an illegal tax is a wrong that must be put right by legal action, this should not entitle the class attorneys to a paycheck that is the equivalent of winning the lottery. This is especially true considering that in most illegal-exaction cases, the class members themselves do not feel particularly aggrieved and do not seek legal action until they are prodded to do so by attorneys who actively seek out these cases.

I do not mean to imply that such attorneys should not be compensated or that they should be necessarily limited to an hourly fee for their work. But, I cannot ignore the reality of these cases, in that payment of the attorney's fees will necessitate either an increase in taxes or a reduction of important governmental services. I therefore encourage Butt and his attorneys to take this cause to the General Assembly, so that it may consider amending Ark. Code Ann. § 26-35-902 (Repl. 1997) to provide a cap for the award of attorney's fees in illegal-exaction cases.

Finally, I agree with Justice Imber that the majority is wrong in holding that the attorney's fees should be based on the refunds claimed, rather than the total amount of the settlement refunds. From my reading of section 26-35-902(a), it is clear that the term "recovery" refers to the total amount of monies obtained in the suit from the taxing entity. Accordingly, I dissent from that part of the majority's opinion limiting counsels' fees to a portion of the refunds actually claimed by the class members.

A NNABELLE CLINTON IMBER, Justice, concurring in part and dissenting in part. While I concur in the majority's decision to deny the motion to dismiss and in the decision to uphold the award of the attorneys' fees, I dissent from the majority's decision to award attorneys' fees based on the *claimed* amount rather than the total amount of the settlement refunds. The statute awarding attorneys' fees in illegal-exaction suits is codified at Ark. Code Ann. § 26-35-902 as follows:

*Award of attorneys' fees — Disposition of residual funds.*

(a) It is the public policy of this state that circuit and chancery courts may, in meritorious litigation brought under Arkansas Constitution, Article 16, § 13, in which the court orders any county, city, or town to refund or return to taxpayers moneys illegally exacted by the county, city, or town, apportion a reasonable part of the recovery of the class members to attorneys of record and order the return or refund of the balance to the members of the class represented.

(b) If, after expiration of a reasonable period of time for the filing of claims for the illegally exacted moneys as ordered by the court, residual funds exist, said residual funds shall be deemed abandoned and escheat to the county, city, or town which exacted same.

Ark. Code Ann. § 26-35-902 (Repl. 1997).

The first rule of statutory construction is to give words their ordinary and usually accepted meaning. *Yamaha Motor Corp. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001); *Arkansas Vinegar Co. v. Ashby*, 294 Ark. 412, 743 S.W.2d 798 (1988). In this case, the issue turns on the word "recovery" in subsection (a) of section 26-35-902. If "recovery" means only the claimed amount, the majority is correct in its analysis; but if "recovery" means the total amount of illegally-exacted funds, then the trial court made no error in awarding a percentage of the total settlement fund. I believe the latter statement is the correct interpretation.

In examining the statute, it is apparent that a total fund is contemplated and an orderly progression results. First, attorneys fees are deducted, then the *balance* is returned or refunded to taxpayers, and, finally, any portion not claimed by the taxpayers then escheats back to the taxing authority that illegally-exacted the funds in the first place. To give "recovery" the majority's interpretation would be to wait for claims to be made and then award a percentage of those claims to the attorneys, but the statute speaks of paying the claims *after* the attorneys' fees are apportioned, not before.

The issue of the term "recovery" has not presented itself in any previous decision by this court in an illegal-exaction case. However, in surveying our illegal-exaction decisions, those cases

that do mention an attorneys' fee show that the fee percentage was based on the entire pool of illegally-exacted funds, and not merely the claimed amount. In particular, the case of *Powell v. Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980), on which the majority relies for its analysis of the attorneys' fee issue, awarded an attorneys' fee of 15% of the total fund, and that amount was affirmed by this court. As pointed out by the majority, *Powell* involved an illegal exaction of $639,226.24 and attorneys' fees of $95,884.31. There was never any question in the *Powell* decision that the attorneys' fees award would be based on any amount other than the total fund.

An illegal-exaction suit that was decided in 1983 shows that the trial court in that case also used the total fund as the basis for its award of an attorney's fee. *See City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1983). In *Cash*, the total fund was $1,264,761.30 and the attorney's fee was $316,190, which is 25% of the total. While the attorney's fee was later reversed, it was reversed on the basis of the class attorney's conflict of interest in having previously represented the defendant as its city attorney at the time the illegally-exacted funds were collected. There was never any challenge to the trial court's calculation of 25% of the total fund.

As stated in many previous decisions of this court, an illegal-exaction suit is a constitutionally-created class action. The United States Supreme Court has stated unequivocally that the basis for an attorney's fee in a class action is the total fund, not the claimed amount of money actually refunded to the class. *See Boeing v. Van Gemert*, 444 U.S. 472 (1980). In *Boeing*, the Court stated that it had "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a *reasonable attorney's fee from the fund as a whole*." *Id*. at 478 (citing several U.S. Supreme Court decisions for this proposition).

In *Boeing*, the settlement provided that any unclaimed amounts of the total fund would revert back to Boeing, the defendant, much the same as the settlement in the instant case, in which unclaimed funds will escheat to the taxing authorities that originally collected the funds. Boeing had appealed the district court's

ruling on attorney's fees because it wanted only the claimed amount of the fund to pay the fees, thus leaving untouched the unclaimed portion that would revert after all claims had been filed. *Id.* The Court, in upholding the district court's ruling, stated that whether or not the members of the class asserted their right to their respective shares, they were still responsible for their respective part of the attorney's fee:

> Although Boeing itself cannot be obliged to pay fees awarded to the class lawyers, its latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation.

*Id.* at 481.

The Court found that when a plaintiff has simply vindicated a "general social grievance," there should be no shifting of attorneys' fees, and the attorney is merely entitled to the fee under the contract with the attorney's named client. *Id.* at 479. However, the Court held that there were certain criteria that, if met, would entitle an attorney to a fee from the entire fund:

> On the other hand, the criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recoverable on his behalf. Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.

*Id.* at 479 (citing generally, Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation*, 88 Harv. L. Rev. 849, 916–922 (1975)).

In the instant case, there is no reason to deviate from the U.S. Supreme Court's reasoning even though this is a constitutionally-created class rather than a typical Rule 23 class action. The class members in this illegal-exaction case also have an undisputed and

mathematically-ascertainable claim to part of the total judgment, and can also obtain their share simply by proof of their individual claims against the fund. The *Boeing* decision explained the reasoning behind this "total fund" rule as follows:

> Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals [which allowed for an attorney's fee from the entire fund] rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share in the recovery.

*Id.* at 480.[1]

In an Arkansas illegal-exaction case, this same reasoning holds true. We have here a class made up of individuals who have a benefit as shown by their mathematically ascertainable share, and whether or not they assert their right to that share of the fund, they should still be responsible for the costs of the litigation that gave them this benefit. The majority rightly points out in its opinion that "[a]lthough not every class member claimed his refund, class counsel did obtain a refund for each member." The majority agrees that the amount of the refund is clearly definable, and "a positive result was obtained in that had the litigation not

---

[1] Contrary to the majority's assertion that "at least one other state has held as we do in the instant case," the case cited for that proposition, *Goodrich v. E.F. Hutton*, 681 A.2d 1039 (Del. 1996), did not hold that claimed amounts were the only measure of a recovery. Instead, the Delaware Supreme Court, using its standard of review to reverse only where there is an abuse of discretion, merely affirmed a trial court's award of attorneys' fees based on the claimed amount of a recovery as being within the trial court's discretion. *Id.* at 1049. In doing so, however, the court noted that the attorneys' fee amount was deducted *from the total $3.3 million common fund*. *Id.* at FN 11. Further, the court increased its award percentage from 16% of the common fund to 33% of the claimed amount, up to a maximum of $515,000 (which was 16% of the common fund). In other words, the amount of attorneys' fees — $515,000 — stayed the same. In the instant case, the majority is *reversing* a trial court, although our standard of review is also abuse of discretion, by stating that the trial court abused its discretion by awarding attorneys fees as they have always been awarded in this state — on the basis of the total fund. Additionally, the majority has not increased the percentage from 25% of the total fund to whatever percentage of the claimed amount would be necessary to obtain the same fee, as was done by the Delaware chancery court. The cited case is inapposite to the instant case.

occurred, each government entity could have continued collecting the illegally exacted funds." An award of attorneys' fees from the total fund is thus the correct measure of the class members' responsibility for their share of the litigation expenses, and if they then choose to let the balance of their share escheat to the districts, that is their prerogative.

Furthermore, there would be no need for the unclaimed funds to "escheat" to the taxing authority by the terms of the statute if they were not part of the recovery. If the recovery includes only the claimed funds, as maintained by the majority, then the unclaimed funds would belong to the taxing authority by right, not by escheat. Because I believe the "recovery" spoken of in the statute must refer to the entire gross amount of the illegally-exacted funds, I must respectfully dissent.

CORBIN, J., joins in this dissent.

JIM HANNAH, Justice, concurring in part and dissenting in part. I concur with the majority that this case should be reversed and remanded; however, I disagree that the 3019 taxpayers should be dismissed, and I disagree that the improperly paid attorneys' fees need not be disgorged.

### Motion to Dismiss

Notice to the 3019 taxpayers was fatally deficient, and on that basis, these tax payers should not be dismissed. *Haberman v. Lisle*, 317 Ark. 600, 884 S.W.2d 262 (1994), was cited by the parties and quoted by the majority with respect to notice. *Haberman* is inapplicable. Arkansas Rule Civil Procedure 23 does not apply to illegal exaction cases. *T&T Chem. Co. v. Priest*, 351 Ark. 537, 95 S.W.3d 750. In *T&T*, we stated, "To the extent that *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), can be read to require the application of Rule 23 to an illegal-exaction case, we overrule it." *T&T*, 351 Ark. at 541. Although *Haberman* is an illegal-exaction case, the court applied Rule 23, and under our holding in *T&T*, Rule 23 may not be applied to an illegal-exaction case. Therefore any reference to *Haberman* in the present illegal exaction case is misplaced.

In the present case, the class members received notice that:

1. The class was certified by court order;

2. Pursuant to the class-certification order, class representatives had been named;

3. The class has certain rights, including:

 a. The right to opt-out of the class;

 b. That class members will not be bound by the action if they opt-out;

 c. If class members opt-out they will not be represented by the class representatives; and,

 d. Class members may opt-out by making written request.

This is the notice required under Rule 23. It does not meet the notice requirements of illegal exaction. Notice in illegal exaction should include:

1. That the illegal-exaction suit is pending and what it alleges;

2. That the class is established by the constitution and who it includes;

3. That a class member may not opt-out and will be bound by any judgment;

4. That class members may wish to become named parties if they want to have greater input with respect to the remedy sought;

5. That class members may wish to become named parties to assure there is no collusion or friendly lawsuits, and to have input in the amount of attorney's fees granted;

6. That class members may declare any alleged illegal tax voluntarily paid so as to remove it from the illegal-exaction suit.

*See generally T&T, supra; Martin v. Couey Chrysler Plymouth, Co.*, 308 Ark. 325, 824 S.W.2d 832 (1992); *Samples v. Grady*, 207 Ark. 724, 182 S.W.2d 875 (1944); *McCarroll v. Farrar*, 199 Ark. 320, 134 S.W.2d 561 (1939); *Laman v. Moore*, 193 Ark. 446, 100 S.W.2d 971 (1937); *Rigsby v. Ruraldale Consol. Sch. Dist. No. 64*, 180 Ark. 122, 20 S.W.2d 624 (1929); *Dreyfus v. Boone*, 88 Ark. 353, 114 S.W. 718 (1908).

In the present case, the 3019 class members never received adequate notice. On that basis, I would deny the motion to dismiss with respect to the 3019 taxpayers.

## Collusion

The real parties in interest in this case are the taxpayers. This appeal is approached as if the taxpayers' attorneys are a party. The appeal involves only the attorneys' fees granted in this case, which might arguably be the most significant event in the case.

The refunds in this case were not great when considering the possible amounts involved. The attorneys arguably received the greatest benefit. Each settlement agreement provided for a refund and attorneys' fees. Ultimately, $8,629,634.67, was refunded to taxpayers. The trial court granted attorneys' fees that amounted to $4,650,569, a figure substantially close to the figure received by taxpayers.

The argument that there was a recovery of $18.6 million dollars is simply illusory. In an illegal-exaction case, whether the taxes were voluntarily paid is always an issue. *Worth, supra.* Here, the defendants just came up with what might be a top figure they might have to pay out. I find nothing to indicate any taxpayer was asked if the taxes were voluntarily paid. There is no evidence to show that $18.6 million ever represented the amount that might be refunded. From the amount actually refunded, it is obvious much of the taxes were voluntarily paid. Also, contrary to the argument of dissent, the fact any unclaimed funds escheat back to the governmental body does not imply that they were part of the amount recovered. To the contrary, the fact unclaimed funds would be returned to the defendants shows the $18.6 million dollar fund was inflated and did not reflect the actual recovering. It only adds support to the idea that the figure was not trustworthy.

It must also be noted that an illegal-exaction case gives rise to a justified concern that the lawsuit may be friendly. The governmental defendants are not the typical Rule 23 tort class action defendants. In tort, the defendants would simply lose money. In illegal exaction, the real losers are the taxpayers who will likely have to make up any shortfall resulting from the suit. The Rule 23 tort class-action defendant has greater reason to fight and reduce the recovery.

*Excessive Fees*

While Mr. Butt intervened to be heard on the issue of fees, there were many taxpayers who did not. Mr. Butt is an experienced attorney who believed the matter of attorneys' fees needed attention. The average taxpayer would not enjoy his level of understanding, but if the notice had been adequate, other taxpayers might have sought to be named as parties. Then they could have asserted their views on the fees and had a say in what they might have argued was a friendly lawsuit.

I also must note that standing alone, the amount of the fees is troubling. As the appellant notes, this court long ago in *Bradshaw & Helm v. Bank of Little Rock*, 76 Ark. 501, 89 S.W. 316 (1905), stated that an award of fees from a common fund was intended to shift the burden of the fees from the attorneys' client to the defendant, and was not intended to produce a larger fee than they might have expected from their own client. I agree that the fee should be based on the actual refund amount because that more accurately reflects the result obtained in this case. *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 368, 849 S.W.2d 938 (1993). The $18.6 million is the amount of possible recovery alleged to in the settlement agreements, which may well lack the proper adversary proceedings required to be trustworthy. The actual amount refunded appears to more accurately reflect the benefit salvaged for the taxpayers. *Millsap v. Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986). In any event, the critical analysis is whether the fee is reasonable as required under Ark. Code Ann. § 26-35-902 (Repl. 1997). I am not convinced that it is.

Contrary to the majority, I disagree that the issue of the fees is moot. The majority treats the fees as if they were a judgment paid and then appealed. As the law cited by the majority states, a party who pays a judgment may not pay and then appeal it. It is obvious why he or she may not appeal. The judgment was voluntarily paid. The law on voluntary payment of judgments is not applicable in this case. The parties objecting to payment of the fees did not pay the fees. The fees were paid by the defendants who wanted the matter to go away. The defendants paid the fees at their peril, and the attorneys for the class accepted them at their peril. Both the defendants and the attorneys knew the issue was

contested. Therefore, presumably the attorneys would be prepared to disgorge the fees.

Because notice was inadequate, the class members were never put in a position to understand that the issue of the fees was something about which they should be concerned. They never knew that the fees could consume much of the actual recovery of past overpaid taxes. I would reverse the case on this point and require the attorneys to disgorge the funds pending provision of proper notice and further hearings.

## *Guardian* Ad Litem

In this case, experienced counsel was involved in the intervention on the issue of attorneys fees, which is why this appeal is before us today. Because of the involvement of counsel on behalf of appellees, the issue of fees has been addressed. That may not always be the case in illegal exaction suits. If not, as noted in *Haas v. Pittsburgh National Bank*, 77 F.R.D. 382 (W.D. Penn. 1977), a problem arises because class counsel and the defendants agree on a remedy. The defendant, having agreed to a sum in settlement, is indifferent to the amount of the fee that may come from that sum. Also, the interest of the class members is specifically adverse to that of their lawyers. The judge is left to provide the opposition required in our adversarial system. It would be better to appoint a guardian *ad litem* in such an instance. *See Miller v. Mackey Int'l, Inc.*, 70 F.R.D. 533 (S.D. Fla. 1976). In Rule 23 class actions, the more common approach is for the trial judge to act as a fiduciary for the beneficiaries of a common fund. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994). As noted by the Tenth Circuit in *Gottlieb*, the need may be compelling in some cases. In the case of illegal exaction, where remedies vary greatly and common fund is only part of the analysis, use of a guardian *ad litem* may be the better approach, especially in light of the fact that public funds are at issue.

I would reverse and remand the case for disgorgement of the attorneys' fees, provision of adequate notice, further hearings on attorneys' fees, and for consideration of the other issues noted above.